UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**DAVID FELIX JURADO,**

    Defendant.
_____/

Case No. 11-CR-20699-13

HON. Nancy G. Edmunds

## SENTENCING MEMORANDUM FOR DEFENDANT, DAVID FELIX JURADO

NOW COMES, Defendant DAVID FELIX JURADO, by and through his counsel James C. Thomas of O'REILLY RANCILIO, P.C., and files the following Sentencing Memorandum setting forth all factors that this Honorable Court should consider in determining the type and length of sentence for DAVID FELIX JURADO ("Mr. Jurado").

### I. SENTENCING METHODOLOGY AND ISSUES

The United States Supreme Court has made clear that the Federal Sentencing Guidelines ("Guidelines") are now to be considered as advisory only. See United States v. Booker, 543 U.S. 220 (2005); United States v. Michael, 576 F.3d 323 (6th Cir. 2009). The Sixth Circuit has recognized that Booker "breathe[d] life into the authority of the district court judges to engage in individualized sentencing."

1

United States v. Vonner, 516 F.3d 382, 392 (6th Cir. 2008) (en banc). The term "advisory" no longer requires a slavish application of the Guidelines under the guise of "fair consideration". United States v. Jaber, 362 F.Supp.2d 365 (D. Mass. 2005). Before imposing a sentence, a district court should begin by calculating the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 39 (2007). Next, the district court must also consider factors enumerated in 18 U.S.C. § 3553(a) in order to impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes set forth in 18 U.S.C. § 3553(a)(2). Gall, at 50, fn6. See United States v. Foreman, 436 F.3d 638 n.1 (6th Cir. 2006) abrogated on other grounds by United States v. Young, 580 F.3d 373 (6th Cir. 2009). Those statutory purposes are:

> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant;
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). As some courts have explained, these purposes are in consideration of retribution, deterrence, incapacitation and rehabilitation. See United States v. Presley, 547 F.3d 625 (6th Cir. 2008); United States v. Denardi, 892 F.2d 269, 276 (3rd Cir. 1989). To achieve the goals of sentencing, the Court

2

must therefore consider the seven factors outlined in 18 U.S.C. § 3553(a). United States v. Webb, 403 F.3d 373, 385 n.8 (6th Cir. 2005).

It is essential to approach the sentencing of an individual, first recognizing that the Guidelines are no longer to be presumed reasonable. Nelson v. United States, 555 U.S. 350, 352 (2009) (per curiam); See also Webb, 403 F.3d at 385 n. 9 ("[W[e also decline to hold that a sentence within a proper Guidelines range is per-se reasonable. Such a per-se test ... would effectively re-institute mandatory adherence to the Guidelines.").

Sentences must be both procedurally and substantively reasonable, and courts have distinguished between the two. United States v. Poynter, 495 F.3d 349, 351 (6th Cir. 2007). For a sentence to be procedurally reasonable, when a defendant raises non-frivolous arguments in seeking a lower sentence, "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." United States v. Recla, 560 F.3d 539, 547 (6th Cir. 2009) (citing Rita). To be substantively reasonable, the sentence must be "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." United States v. Vowell, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotations omitted).

3

When applying the aforementioned factors to Mr. Jurado, the Court "must make an individualized assessment based on the facts presented" by the case without giving presumptive weight to the guidelines sentencing range. Gall, supra at 48-49. See also Koon v. United States, 518 U.S. 81, 113 (1996) (stating every convicted person should be considered as an individual and every case considered as a unique study in human failings). Judges are encouraged to consider all relevant facts to avoid sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Mr. Jurado's case is one that warrants attention to his personal characteristics and flexibility by this Honorable Court.

## II. Rule 11 Plea Agreement

On October 7, 2013, Mr. Jurado pled guilty pursuant to a Rule 11 Plea Agreement to Count 3 of the Second Superseding Indictment charging Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine and 1,000 Kilograms or More of Marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(ii)(II), and (b)(1)(A)(iv). Mr. Jurado's sentencing has been re-set for February 3, 2014.

Mr. Jurado's plea was pursuant to a Rule 11 Plea Agreement which reads, in part:

> THERE ARE NO SENTENCING GUIDELINE DISPUTES. THE PARTIES AGREE THAT A STATUTORY MANDATORY MINIMUM TERM OF IMPRISONMENT OF TEN YEARS IS APPLICABLE IN THIS CASE. THE

4

PARTIES FURTHER AGREE THAT THE APPLICABLE SENTENCING GUIDELINE RANGE IS 168 TO 210 MONTHS, UNLESS SAFETY VALVE APPLIES AT WHICH TIME THE APPLICABLE GUIDELINE RANGE WOULD BE 135 TO 168 MONTHS. PURSUANT TO RULE 11(c)(1)(B), THE GOVERNMENT MAKES A NON-BINDING RECOMMENDATION THAT THE SENTENCE OF IMPRISONMENT WILL BE NO MORE THAN THE BOTTOM OFF THE SENTENCING GUIDELINE RANGE.

THE COURT MUST IMPOSE A TERM OF SUPERVISED RELEASE ON COUNT THREE OF NO LESS THAN FIVE YEARS UNLESS THE COURT FINDS THAT THE DEFENDANT IS SAFETY VALVE ELIGIBLE.

THERE IS NO AGREEMENT AS TO THE AMOUNT OF THE FINE.

RESITUTION IS NOT APPLICABLE IN THIS CASE.

THE DEFENDANT AGREES TO FORFEIT HIS INTEREST TO THE UNITED STATES IN THE FOLLOWING: (a) ANY PROPERTY, REAL OR PERSONAL, CONSTITUTIING OR DERIVED FROM ANY PROCEEDS OBTAINED, DIRECTLY OR INDIRECTLY, AS A RESULT OF THE VIOLATIONS ALLEGED IN COUNT THREE OF THE SECOND SUPERSEDING INDICTMENT; (b) ANY PROPERTY, REAL OR PERSONAL, INVOLVED IN THE COMMISSIONS OF THE VIOLATIONS ALLEGED IN COUNT THREE OF THE SECOND SUPERSEDING INDICTMENT; AND/OR (c) A MONEY JUDGMENT, AND ALL TRACEABLE INTEREST AND PROCEEDS WHICH SUM IN AGGREGATE IS PROPERTY REPRESENTING THE PROCEEDS OF THE AFOREMENTIONED OFFENSES, OR IS TRACEABLE TO SUCH PROPERTY, AND/OR IS INVOLVED IN THE VIOLATIONS ALLEGED IN COUNT THREE OF THE SECOND SUPERSEDING INDICTMENT.

Until 2005, a defendant was precluded from arguing a variance outside the express terms of a Rule 11 Plea Agreement. United States v. Williams, 510 F.3d 416, 435 (3rd. Cir. 2007). That is not true today. The district court has an independent obligation to exercise its discretion to find an appropriate sentence. Freeman v. United States, 131 U.S. 2685 (2011); United States v. Abram, 440 F. Appx. 470, 473 (6th Cir. 2011) (unpublished). Upon review of the United States Sentencing Guidelines Commission statistics, both nationally and for the Eastern

District of Michigan, it appears as if judges are becoming more willing to exercise their discretion and sentence below the Guidelines.

## III. COMPUTATION OF THE GUIDELINES

Mr. Jurado's base offense level, 38, is a number strictly controlled by the quantity of narcotics attributed to him. The Probation Department gave Mr. Jurado deductions pursuant to USSG § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), and acceptance of responsibility pursuant to both USSG § 3E1.1(a) and USSG § 3E1.1(b). As stated in the Presentence Investigation Report ("PSIR"), Mr. Jurado has clearly accepted responsibility for the offense. After the relevant deductions, Mr. Jurado's Guidelines calculations in the PSIR result in a total offense level of 33, and a criminal history category of I, which provides for a recommended guideline range of 135 to 168 months imprisonment. There are no objections to the calculation of the Guidelines or to the PSIR report.

## IV. VARIANCE FROM ADVISORY GUIDELINES

Counsel submits that the Guideline range of 135-168 months fails to take into account the Congressional directive that the "guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence

or an otherwise serious offense." 28 U.S.C. § 944(j). Under the particular facts and circumstances of this case, the advisory guidelines are greater than necessary to achieve the stated goals of sentencing. United States v. Cherry, 487 F.3d 366 (6th Cir. 2007) (where defendant convicted of possessing child pornography and Guideline range was 210-262 months, sentence of 120 months was proper, rejecting the government's argument that the sentence violates Congressional will, as expressed in the Guidelines, because such an argument "would give too little effect to the parsimony provision of § 3553(a) – that the district court shall impose a sentence 'sufficient, but not greater than necessary' to comply with § 3553(a)(2)"). Furthermore, Mr. Jurado's guidelines are focused largely on quantity disregarding other relevant characteristics particular to him such as his actual role in the offense, his background, and the manipulations of the confidential informant in this case. United States v. Cabrera, 567 F.Supp.2d 271 (D. Mass. 2008) (court imposed sentence of 24 months where defendant was convicted of possession of drugs with intent to distribute and had guidelines of 70-78 months, in part because the guidelines focused on the quantity of the drugs he had and not his real role or background.)

The Government has recommended a sentence of 135 months, the bottom of the sentencing guideline range. Counsel suggests that this Honorable Court is not bound by this recommendation. Instead, the Court should consider the factors

below to fashion an appropriate sentence for Mr. Jurado at 60 months. This is below the 135 months imprisonment suggested by the PSIR and the Government, and also below the 120 months mandatory minimum.

The logic of the Defendant's argument for leniency is further bolstered by a recent speech to the American Bar Association where Attorney General Eric Holder stated, "[i]t's clear – as we come together today – that too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason." http://blogs.wsj.com/washwire/2013/08/12/text-of-holder-speech.

Terms of imprisonment are not to be handed down without serious consideration of alternatives, and "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. When imposing a sentence, courts may vary from the Guidelines based solely on policy considerations, including disagreements with the Guidelines. Kimbrough v. United States, 552 U.S. 85 (2007). Even when a traditional departure is not justified, a non-guideline sentence can be appropriate because the guidelines fail to reflect § 3553(a) considerations, or "because the case warrants a different sentence regardless." Rita v. United States, 551 U.S. 338, 351 (2007).

## IV. APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS

### 1. The Nature and Circumstances of the Offense and History and Characteristics of Mr. Jurado

Mr. Jurado was born on August 18, 1981 in Detroit, Michigan to Encarnacion and Carmen Jurado. Mr. Jurado has two siblings that reside in Michigan. He is a dedicated father to two young sons he shares with his wife Janeth; David, who is four years old, and Jesus, who is one year old. Mr. Jurado is a devout man who is active in his church and community as evidenced by the words of his Pastor in a letter to this Honorable Court. He is unconditionally supported by his family who describes him as kind and loving; his business peers who describe him as a family man and mentor; and his friends who describe him as hard-working and compassionate. The letters which will be separately submitted to this Honorable Court will attest that those who know Mr. Jurado have taken note that since he has been charged in this case, there has been a significant change in him, and they also confirm the remorse he feels for the conduct for which he has pled guilty to in this matter.

Mr. Jurado is surrounded by a close family, devoted wife, and supportive community. As this Honorable Court is aware, it is not commonplace that defendants have such a large and dedicated support system like Mr. Jurado is fortunate enough to enjoy. Mr. Jurado's wife is a homemaker and he has supported his family for the past decade by running his family business. He is

intimately involved in the upbringing of his two young sons. Independently of the alleged criminal activity, Mr. Jurado has been a provider to his household both financially and emotionally, and he also supports his extended family and community. As apparent in the letters submitted on his behalf, Mr. Jurado possesses many positive attributes and is worthy of this Honorable Court's leniency.

The rigidity of the once mandatory Guidelines makes it easy for fashioning a sentence to be a matter of mechanics. However, post Booker supra, it is not. District Courts have "increasingly recognized the importance of departure by reason of offender characteristics for the fair fulfillment of the sentencing scheme proscribed by the Sentencing Reform Act and the Sentencing Guidelines." See United States v. Restrepo, 999 F.2d 640, 643 (2nd Cir. 1993) (quoting United States v. Merritt, 988 F.2d 1298, 1302 (2nd Cir.), cert. denied, 124 L.Ed.2d 683 (1993). Mr. Jurado's personal characteristics are particularly relevant to the courts duty to impose the least severe sentence sufficient to accomplish the goals of sentencing enumerated at 18 U.S.C. 3552, et. seq. See United States v. Santoya, 493 F.Supp.2d 1075 (E.D. Wisc. 2007) (Cocaine distribution case where defendant, a career offender, had guidelines of 188 to 235 months but the court imposed 138 months in part because defendant "has significant positives in his character and background as evidenced by the letter from his family and fiancé

which the guidelines did not take into account and because the judge is "permitted to consider the entirety of the defendant's background and character, not just the negatives reflected in his criminal history"). Similarly, a sentencing judge must be cognizant of offender characteristics that would make the effect of imprisonment more severe for the defendant than the "typical" defendant. See United States v. Brock, 108 F.3d 31 (4th Cir. 1997). It is appropriate for a sentencing court to depart from the Guidelines based upon evidence of a substantial likelihood that a defendant will successfully overcome the cause of the criminal behavior being punished. See United States v. Davis, 763 F.Supp. 645, 652 (D.C. Cir. 1991).

Notably, this is Mr. Jurado's first criminal conviction. Aside from Mr. Jurado's conduct in the instant offense, it is apparent from the letters submitted on his behalf that he has led a productive life that has touched family, friends and his community. The overwhelming love and support towards Mr. Jurado, along with his upright lifestyle since being indicted, goes far to show that Mr. Jurado will lead a productive and crime-free life when returning to society. United States v. Collington, 461 F.3d 805 (6th Cir. 2006) (Below-guideline sentence affirmed in part because it was "sufficient enough to reflect the crimes committed while allowing for the possibility that the defendant may reform and after his release from prison, when he is in his mid-thirties, may go on to a productive life in society.")

2. **The Need for the Sentence Imposed—**

   **(A) To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense**

Mr. Jurado understands the seriousness of his conduct, and has taken full responsibility for his actions. He is not resentful of the investigation, or investigators. Mr. Jurado has expressed deep regret and shame to all those around him for his actions. Counsel has witnessed firsthand how truly remorseful Mr. Jurado is, and submits that his sincere remorse should be taken into account. United States v. Howe, 543 F.3d 128, 130 (3d Cir. 2008); See also, United States v. Jaroszenko, 92 F.3d 486, 488 (7th Cir. 1996) (Defendant's degree of remorse may be considered in a downward variance from the Guidelines range under the statutory sentencing factors). Furthermore, Mr. Jurado will suffer punishment for his actions far beyond the reach of the judicial system. Most significantly, he will lose out on watching his children grow at a very important stage in their lives. A lengthy term of confinement is not necessary to achieve the purposes set forth under this section.

   **(B) Afford Adequate Deterrence to Criminal Conduct**

Mr. Jurado is a business owner in the City of Detroit, and his family is very active in the community. As referenced in letters to the Court, the repercussions of Mr. Jurado's actions have and will continue to profoundly affect his business, family and friends. The stigma of Mr. Jurado's conviction will go far to both

punish him and deter him from future criminal conduct. It is well known that a felony conviction wreaks havoc on a person's life. United States v. Wulff, 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation.") See generally United States v. Leon, 341 F.3d 928, 929 (9th Cir. 2003); United States v. Aguirre, 214 F.3d 1122, 1123 (9th Cir. 2000).

Recent studies have shown variations in prison time and probation "have no detectable effects on rates of re-arrest". Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism Among Drug Offenders*, 48 Criminology 357 (2010). Additionally, the fact that Mr. Jurado has such a close-knit family makes is less likely that he will reoffend. Shirley R. Klein *et al., Inmate Family Functioning*, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures.").

Mr. Jurado is extremely appreciative that he has had the opportunity to be released with a tether. He has been able to spend time with his wife and kids, dispose of assets to help support his family during any term of incarceration, and he has achieved a renewed closeness with his family. His conduct during the period at which he has been released on bond proves to this Honorable Court that when he has ultimately served his term of incarceration, he will not return to a life

of crime. Mr. Jurado does not need to serve a lengthy term in prison to be rehabilitated. He has rehabilitated himself with his respect for law enforcement, his guilty plea, his acceptance of responsibility, and the love and support of his family and friends. As stated in the PSIR, any sentence imposed may serve as an adequate deterrent to Mr. Jurado and others who may be considering engaging in similar conduct.

### (C) To Protect the Public From Further Crimes of the Defendant

Not only is this Mr. Jurado's first criminal conviction, but he has never been accused of violent or assaultive behaviors. Based on his extreme remorse, the support of his family, the support of his peers, and the reasons already stated above, Mr. Jurado is not likely to be a recidivist.

### (D) Provide the Defendant with Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner

Mr. Jurado earned his high school diploma and has some college credits. Mr. Jurado would like to avail himself of any educational and/or vocational programs available at his designated institution.

### 3. The Kinds of Sentences Available; and 4. The Kinds of Sentence and The Sentencing Range Established By the Federal Sentencing Guidelines

Typically, the charges Mr. Jurado has pled guilty to require a mandatory minimum of ten years imprisonment. The 'safety valve' provision of 18 U.S.C. §

3553(f) provides that in some drug offenses, including violations of 21 U.S.C. § 841, the sentencing court may impose a sentence without regard to any statutory minimum sentence, if the court determines that the five criteria listed in § 3553(f) are satisfied. USSG 5C1.2 interprets the safety valve exception. As stated in the PSIR, Mr. Jurado qualifies for the safety valve reduction. As a result, the mandatory minimum, 120 months, does not apply.

5. **Any Pertinent Policy Statement Issued by the Sentencing Commission**

On September 13, 2013, the Sentencing Commission issued a statement calling for Congressional action, including reduction of the mandatory minimum penalties for drug offenses. Although Mr. Jurado qualifies for safety valve, the fact that the Sentencing Commission is reevaluating the effectiveness of Federal mandatory minimum sentences is relevant. The quantity-driven sentencing for drug crimes has led to unwarranted disparity in sentencing, contributed to a waste of federal resources, and significantly added to the federal prison population.

6. **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

Mr. Jurado has approximately 18 codefendants in this matter. Notably, the only other codefendant that has been sentenced is Mr. Walter Ogden who was driving a recreational vehicle containing approximately $2,000,000.00 in drug proceeds. Mr. Ogden also pled guilty to Count 3 of the Second Superseding

Indictment, and had a guideline range of 168-210 months, unless safety valve applied, at which time the guidelines were 135-168. Mr. Ogden was sentenced to 60 months imprisonment, followed by 36 months supervised release.

## 7. The Need to Provide Restitution to Any Victims

Restitution is not applicable in this case. It has been generally held that in narcotic offenses restitution is not applicable. As a result of the execution of search warrants in the above entitled matter, the Government has forfeited in excess of $800,000 in cash, along with automobiles and other personal property.

## V. CONCLUSION

Given the foregoing facts and circumstances, defense counsel requests this Honorable Court fashion a sentence for David Felix Jurado that is sufficient, but not greater than necessary to satisfy the requirements of 18 U.S.C. § 3553(a). Considering the above arguments, it is respectfully requested that this Honorable Court sentence Mr. Jurado to 60 months incarceration.

Respectfully submitted,

O'REILLY RANCILLIO, P.C.

<u>/s/ James C. Thomas</u>
By: James C. Thomas (P23801)
Attorney for Defendant, David Felix Jurado
2500 Buhl Building
535 Griswold Street
Detroit, MI 48226
(313) 963-2420
jthomas@orlaw.com

Date: January 10, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

/S/ James C. Thomas

James C. Thomas